2020 IL App (1st) 173022

THIRD DIVISION
September 9, 2020

No. 1-17-3022

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CR 10568 |
| DEVON WOODS, | ) ) | Honorable Ursula Walowski, Judge Presiding |
| Defendant-Appellant. | ) | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Devon Woods was convicted of violating a provision of the Sex Offender Registration Act that requires individuals "lack[ing] a fixed residence" to report weekly to the "law enforcement agency where the sex offender is located." 730 ILCS 150/6 (West 2016). As the State failed to prove beyond a reasonable doubt that defendant lacked a fixed residence within Chicago from June 4 to June 9, 2016, we reverse defendant's conviction outright.

¶ 2                                    BACKGROUND

¶ 3    Evidence of defendant's prior criminal history is unnecessary to the disposition of this appeal. It suffices to say that defendant was subject to the reporting requirements mandated by the Sex Offender Registration Act (SORA). See 730 ILCS 150/1 et seq. (West 2016).

¶ 4 In July 2016, a grand jury returned a one-count indictment charging defendant with violating section 6 of SORA. See 730 ILCS 150/6 (West 2016). The indictment alleged that between June 4 and June 9, 2016, defendant (1) was required to report under SORA, (2) lacked a fixed residence, and (3) failed to report weekly with the Chicago Police Department.

¶ 5 At the short bench trial, Doris Gaskew, who worked in criminal registration for the Chicago Police Department, testified that defendant had appeared before her 11 different times in 2015 and 2016 to register. (He did not register every week as required but tended to register every other week, sometimes every third week. That is not the basis of the charge here.)

¶ 6 When defendant would register, he presented an identification card that listed his residence as 11201 South Vernon Avenue in Chicago, Illinois. Despite that address, defendant told Ms. Gaskew that he was homeless, and in his last registration with Gaskew on May 27, 2016, defendant indicated that he had spent the previous week staying and sleeping on the Red Line train that runs through Chicago. Defendant also filled out a registration "for a person lacking a fixed residence" during those past registrations, including the last time he registered on May 27, 2016.

¶ 7 Chicago police officer Michael Hurley testified that, on June 9, 2016, in the 900 block of West 87th Street in Chicago, he conducted a vehicular stop of defendant, who presented an identification card that listed his address as 11201 South Vernon Avenue in Chicago. The car defendant was driving was registered at that address as well. Hurley learned that defendant was not current on his sex-offender registration and took him into custody. The following exchange occurred on direct examination:

"Q. When you processed the defendant did you ask him where he lived?

A. Yes.

Q. Did he indicate where he lived?

A. I believe he gave the address that was on the I.D. and the registered address of the vehicle.

* * *

Q. [W]hen you process an individual do you put that information in the arrest report under offender registration?

A. Yes. We would have confirmed the address he gave us. That would be the address listed as his address of residence."

¶ 8 The police report of defendant's arrest was not admitted as an exhibit, but on cross-examination, Officer Hurley admitted that he wrote down in his report that "the fact that there was a vehicle registered to Mr. Woods in Chicago *** was not consistent with homelessness." The officer said, "I don't recall" when asked whether he had a discussion with defendant "about where he stayed from the night of June 4th to June 9th."

¶ 9 The court ultimately found defendant guilty. In so doing, it provided the following assessment of the evidence:

"The case here is very clear to me that the defendant was registering every week. The Defense Exhibit No. 1 shows that sometimes it was every week. Sometimes he may have skipped a week, but he was registering—which a reasonable inference is with a lack of fixed address for quite some time.

Additionally, the testimony that was presented through Ms. Gaskew was that it had a next court date when his date—not court date but next date when he is supposed to register by, June 3rd. There was nothing presented that he did that. He basically did not. He did not do that.

The next time there is contact with the Chicago Police Department is when he is arrested while driving a vehicle, and he gave an address. At that point it's the same address that he had on an I.D. that he gave to the registering officer, but regardless of that he knew that he was supposed to be back it's very clear on June 3rd and he wasn't.

And basically the prior registering show that he lacked a fixed address, and that's what the State is alleging is that he lacked a fixed residence and therefore failed to report as required any time that following week.

So I find that the evidence is clear here that the defendant did in fact violate the Sex Offender Registration Act, and I am going to find him guilty."

¶ 10     At the sentencing hearing, defendant was sentenced to six years' imprisonment. This appeal followed.

¶ 11                                    ANALYSIS

¶ 12     Defendant raises four arguments on appeal, but we need only consider one—that the State failed to prove him guilty beyond a reasonable doubt.

¶ 13     Due process requires proof beyond a reasonable doubt of every element of the offense for which a defendant is charged. *People v. Lucas*, 231 Ill. 2d 169, 178 (2008); *People v. Nelson*, 2020 IL App (1st) 151960, ¶ 48. The trier of fact need not "disregard inferences that flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. At the same time, no conviction can rest in whole or in part on speculation or guesswork. *People v. Smith*, 185 Ill. 2d 532, 546 (1999) ("It is no help to speculate that the defendant may have killed the victim. No citizen would be safe from prosecution under such a standard.").

¶ 14    In this case, the State charged defendant with violating SORA's section 6 for failing to register in Chicago for the period of June 4 to June 9, 2016. That provision provides, in relevant part, that "[a]ny person who lacks a fixed residence must report weekly, in person, to the appropriate law enforcement agency where the sex offender is located." 730 ILCS 150/6 (West 2016). SORA defines a "fixed residence" as "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year." *Id.* § 2(I). An "aggregate period" of five days within "a calendar year" could mean five consecutive days or five days spread out over the calendar year.

¶ 15    In other words, sex offenders whom society would consider "homeless" do not lack a "fixed residence" under SORA if they have " 'an occasional but predictable place to stay.' " *People v. Wlecke*, 2014 IL App (1st) 112467, ¶ 31 (quoting *People v. Peterson*, 404 Ill. App. 3d 145, 152 (2010)); see also *Peterson*, 404 Ill. App. 3d at 153 ("A person could have a 'fixed residence' by the Act's definition and yet be homeless by the ordinary way of speaking."). We agree with our supreme court and a previous decision of this court that, in the context of defining the housing status of a sex offender in the context of "fixed residences" and "temporary domiciles," SORA "leaves something to be desired, in terms of clarity and consistency." *People v. Pearse*, 2017 IL 121072, ¶ 39; see also *People v. James*, 2019 IL App (1st) 170594, ¶ 18 (noting same).

¶ 16    In any event, as one might expect, to sustain a conviction under section 6 for failing to report on a weekly basis as a sex offender who lacks a fixed residence, the State must prove beyond a reasonable doubt that the defendant "(1) lacked a 'fixed residence' and (2) failed to report weekly." *Wlecke*, 2014 IL App (1st) 112467, ¶ 21; see also *id.* ¶ 31 ("Whether [defendant]

lacked a 'fixed residence' was a critical element for the State to prove to sustain a conviction for violation of section 6 of the Act.").

¶ 17    Section 6 of SORA is jurisdiction-specific, as the sex offender lacking a fixed residence must report to "the appropriate law enforcement agency where the sex offender is located" (730 ILCS 150/6 (West 2016)), which is determined by reference to section 3 of SORA (*id.* § 3(a)). See *James*, 2019 IL App (1st) 170594, ¶ 20 (location of offender's residence is "critical element" in proving SORA violation); *People v. Gomez*, 2017 IL App (1st) 142950, ¶¶ 28-30 (same). Here, the claim is that defendant was residing in Chicago while lacking a fixed residence, meaning he was supposed to report to the Chicago Police Department. 730 ILCS 150/3(a)(1) (West 2016). So the State was required to prove not only that defendant lacked a fixed residence during this window of time and failed to report to the Chicago Police Department, but also that defendant *was residing in Chicago* during the relevant time and failed to so report.

¶ 18    Taking the evidence in the light most favorable to the State, the State *might* have proven that defendant was residing in Chicago during this time period. Officer Hurley believed he recalled that, at the time of the arrest and processing, defendant listed the South Vernon address, located in Chicago, as his current place of residence. That admission—the only evidence anywhere in this trial about defendant's residence during that window of time—might have been enough to tie him to the jurisdiction of Chicago for reporting purposes. (We say this *might* be enough because, to accept this admission but *not* accept that he was living at the South Vernon address as a fixed residence along with it, of course, the fact finder would have to dice up the admission, believing the "Chicago" part and disbelieving the "South Vernon address" part.)

¶ 19    But we need not consider that further because, even if the evidence were sufficient to prove that defendant resided in Chicago during the relevant time period, the State did not prove

that defendant *lacked a fixed residence* in Chicago between June 4 to June 9, 2016. The testimony of Doris Gaskew, taken in the light most favorable to the State, proved only that for a significant period of time, including up to two weeks before his arrest, defendant lived in Chicago without a fixed residence. But she admitted, as she must, that she had no idea of defendant's housing status or where he lived after he left the police station on May 27, 2016. Officer Hurley, for his part, admitted that he made no effort to confirm the "homeless" status of defendant; as just noted, defendant gave him the South Vernon address, a dwelling of some kind, as his residence, and Hurley also admitted writing in his report words to the effect that defendant's possession of a vehicle, registered to that same address, seemed inconsistent with his being homeless.

¶ 20    Indeed, it did. The trial court inferred defendant's homelessness from June 4 to June 9 from his previous homelessness. But not everyone who is homeless remains forever homeless; indeed, SORA specifically contemplates, in its broad definitions of "fixed residence" and "temporary domiciles," that sex offenders may, from time to time, manage to secure shelter of a non-permanent nature, if not of a more permanent kind. There was absolutely no evidence that defendant did not have a fixed residence, nothing but speculation based on his history. " '[W]e will not fill in the gaps in the State's evidence with conjecture' " as to defendant's housing status. *James*, 2019 IL App (1st) 170594, ¶ 22 (quoting *Gomez*, 2017 IL App (1st) 142950, ¶ 24). The State must prove its case, namely that during the operative time window, defendant did not have a fixed residence and thus was subject to weekly reporting under section 6.

¶ 21    In *Wlecke*, 2014 IL App (1st) 112467, ¶ 9, the defendant had been recently released from prison and was given an identification card from the Department of Corrections that listed the address of a Veterans Administration (VA) hospital on South Damen Avenue. Not long after he

was released, the defendant was arrested for failing to report weekly as a person without a fixed residence. *Id.* ¶ 11. The defendant told the police at that time that he had been "staying with friends" at a specified address on School Street in Chicago. *Id.* ¶ 12. The State provided no other evidence at trial as to where the defendant had been residing (as here), and the defendant did not testify at trial (as here).

¶ 22   We reversed his conviction for a section 6 violation, reasoning that to constitute a "fixed residence" under SORA, the defendant need only reside at that location for an aggregate of five days out of a year. *Id.* ¶ 31; see 730 ILCS 150/2(I) (West 2016). The defendant's admission that he had been "staying with friends" at that address did not disqualify that residence from being a "fixed residence," and the State had not provided any proof to so disqualify it. *Wlecke*, 2014 IL App (1st) 112467, ¶ 31. Nor did the State prove that the defendant had not resided, for any period of time, at the VA hospital listed on his identification card, which we determined could also be a "fixed residence" under the broad definition in SORA. *Id.* ¶ 31. Given "the State's failure to prove that Wlecke did not live at either address for an aggregate of five days between June 11 and June 20, 2010, the evidence [was] insufficient to support a reasonable inference that Wlecke lacked a 'fixed residence.' Therefore, proof of an essential element of the crime of which Wlecke was convicted is missing." *Id.* ¶ 32.

¶ 23   The same problems of proof that existed in *Wlecke* exist here. The State did not prove that the address defendant gave the police on South Vernon Avenue was not a "fixed residence" within the meaning of SORA. The State did not show that defendant did not actually live there, even if only recently, and the fact that he was driving a car registered to that address certainly placed at least some credibility in the possibility that he did, in fact, temporarily reside there— five days in the aggregate, as required by SORA. See 730 ILCS 150/2(I) (West 2016).

¶ 24   We cannot agree with the State's attempts to salvage this conviction. The State points to "the absence of any evidence that [defendant's] status as homeless had changed during that brief period of time" in June 2016 and likewise notes, elsewhere in its brief, that there was "no evidence that defendant's status as homeless in Chicago, which had continued for almost a year up to that point, had changed in the 13 days since he last registered."

¶ 25   First of all, we disagree with that assessment of the evidence. Defendant told the police he resided at the South Vernon address, and he was driving a car registered at that same address, which certainly suggests he had recently been at that address. *That* is evidence that his "status as homeless" had, in fact, changed. More to the point, the State cannot shift the burden to defendant to prove that he *wasn't* homeless. It was the obligation of the State, which charged defendant with failing to report weekly as a person lacking a fixed residence, to prove that defendant was, in fact, without a fixed residence—that his "status as homeless in Chicago" had *not* changed since his last reporting.

¶ 26   The State could have used an admission by defendant but had none; it could have presented evidence that officers looked into the matter and confirmed that defendant did not, in fact, reside at that South Vernon address or anywhere else during that time window, but the State offered no such proof. One way or another, the State had to prove that defendant "did not stay in any one place for at least five days" during the relevant time window. *Wlecke*, 2014 IL App (1st) 112467, ¶ 21. But here, as in *James*, "[t]he State failed to meet its 'affirmative obligation to investigate the charge.' " *Id.* (quoting *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 21).

¶ 27   The State correctly notes that, if defendant had stopped being "homeless" and had found a residence, temporary or otherwise, he had an obligation to report that fact to the Chicago Police Department. The State cites section 6 of SORA, but that requirement is actually found in section

3. See 730 ILCS 150/3(b) (West 2016) ("Any sex offender *** regardless of any initial, prior, or other registration, shall, within 3 days of *** establishing a residence *** register in person as set forth in subsection (a) or (a-5)."). The fact that defendant did not so report, in the State's eyes, suggests that defendant had nothing to report about a fixed residence—he remained homeless.

¶ 28    There are three problems with that argument. For one, the fact that defendant did not report a fixed residence—if in fact he did not—does not necessarily mean he didn't have one. It might only mean he failed to report it.

¶ 29    Second, there was no evidence that defendant did *not* report a fixed residence with the Chicago Police Department. Ms. Gaskew, the only one of the two State's witnesses who could possibly know the answer, was never asked that question. It was not part of the State's proof. Gaskew briefly discussed defendant's overall registration file but focused on the form used for homeless sex offenders, State's exhibit No. 2, to show that defendant hadn't reported as homeless since May 27, 2016. Defense counsel, on cross-examination, made that point clear in asking Ms. Gaskew about State's exhibit No. 2:

> "Q. That's part of a log for Mr. Woods' registration history; is that right?
>
> A. Yes.
>
> Q. Is that kind of log—that log kept for every person who has to register in the same way?
>
> A. For the homeless weekly, yes."

For the homeless weekly reporters, she said, not a log with defendant's entire history.

¶ 30    And third, it is at least debatable that, by the State's own proof, defendant *did* report the South Vernon address in Chicago. Ms. Gaskew was clear in her testimony that defendant had

already given her the South Vernon address, as indicated on State's exhibit 1. All those weeks that defendant reported to her, he gave her that address from his ID card, and she recorded it. He told her he was homeless at the time, so she had him fill out the form (State's exhibit No. 2) for homeless sex offenders, but that does not change the fact that he gave her that South Vernon address. Chicago had it on file all along.

¶ 31     Is that not complying with section 3's requirement? That question has not been briefed and is not directly before us. So we will leave for another day any attempt to untangle the confusing and contradictory reporting provisions of sections 3 and 6. Suffice it for now to say that the State put forth no affirmative proof that defendant lacked a fixed residence, such that defendant was required to report weekly during the time period of June 4 to June 9, 2016. Absent that proof, defendant's conviction cannot stand.

¶ 32     We reverse outright defendant's conviction.

¶ 33     Reversed.

**No. 1-17-3022**

| | |
|---|---|
| **Cite as:** | *People v. Woods*, 2020 IL App (1st) 173022 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-10568; the Hon. Ursula Walowski, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Ann B. McLennan, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Daniel Piwowarczyk, and Kim Przekota, Assistant State's Attorneys, of counsel), for the People. |