2021 IL App (2d) 180543
No. 2-18-0543
Opinion filed February 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1428 |
| STEPHEN P. SWEIGART, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, Stephen Sweigart, was convicted of failing to register in

accordance with the requirements of the Murderer and Violent Offender Against Youth

Registration Act (Act) (730 ILCS 154/10(a) (West 2016)). The court sentenced him to two years

in prison. Defendant appeals. We reverse defendant's conviction because the State failed to prove

the offense beyond a reasonable doubt.

¶ 2                                    I. BACKGROUND

¶ 3                                  A. Overview of the Act

¶ 4    Before addressing the facts of defendant's case, we provide an overview of some of the

most pertinent provisions of the Act.

¶ 5    A person who is convicted of certain crimes, including child abduction, is required to register as a "violent offender against youth" in accordance with the Act. See 730 ILCS 154/5(a)(1)(A), (b)(3), 10(a) (West 2016). When registering, the person must provide law enforcement with accurate information, including, but not limited to, his or her current address. 730 ILCS 154/10(a) (West 2016). The law enforcement agency that registers a person "shall forward any required information to the Department of State Police" and "enter the information into the Law Enforcement Agencies Data System (LEADS)." 730 ILCS 154/45 (West 2016).

¶ 6    Irrespective of any changes in living arrangements, a person subject to the Act must periodically report in person to "the appropriate law enforcement agency with whom he or she last registered." 730 ILCS 154/30 (West 2016). All registrants must so report at least annually. 730 ILCS 154/30 (West 2016). Persons who lack a fixed residence, however, are subject to more frequent reporting. The Act defines "fixed residence" as "any and all places that a violent offender against youth resides for an aggregate period of time of 5 or more days in a calendar year." 730 ILCS 154/5(i) (West 2016). A person without a fixed residence "must report weekly, in person, with the sheriff's office of the county in which he or she is located in an unincorporated area, or with the chief of police in the municipality in which he or she is located." 730 ILCS 154/10(a) (West 2016).

¶ 7    Aside from the required periodic reporting, a person subject to the Act who establishes a new residence or takes up a temporary domicile in any Illinois county must register with law enforcement in the new location within five days. 730 ILCS 154/10(b) (West 2016). The Act's definitions of "place of residence" and "temporary domicile" substantially mirror the definition of a "fixed residence": *i.e.*, any and all places where the person "resides for an aggregate period of time of 5 or more days in a calendar year." 730 ILCS 154/5(i) (West 2016).

¶ 8    Section 30 of the Act further specifies the requirements for when a person who is subject to the Act changes his or her address. That section provides, in relevant portion:

"If any person required to register under this Act lacks a fixed residence or temporary domicile, he or she must notify, in person, the agency of jurisdiction of his or her last known address within 5 days after ceasing to have a fixed residence and if the offender leaves the last jurisdiction of residence, he or she must, within 48 hours after leaving, register in person with the new agency of jurisdiction. If any other person required to register under this Act changes his or her residence address, place of employment, or school, he or she shall report in person to the law enforcement agency with whom he or she last registered of his or her new address, change in employment, or school and register, in person, with the appropriate law enforcement agency within the time period specified in Section 10. The law enforcement agency shall, within 3 days of the reporting in person by the person required to register under this Act, notify the Department of State Police of the new place of residence, change in employment, or school." 730 ILCS 154/30 (West 2016).

¶ 9    A person who violates the Act's provisions commits a Class 3 felony. 730 ILCS 154/60 (West 2016). Subsequent violations of the Act are Class 2 felonies. 730 ILCS 154/60 (West 2016).

¶ 10                    B. Defendant's Alleged Violation of the Act

¶ 11   On December 6, 2017, defendant was charged by superseding indictment with violating the Act in the following manner on or about June 1, 2017:

"defendant, a violent offender against youth, knowingly failed to register weekly as required as a homeless person, on or before May 31, 2017, with his last registration occurring on May 24, 2017, in accordance with the provisions of the [Act], with the Aurora Police Department."

¶ 12    The evidence at trial showed the following. In 2011, defendant was convicted of child abduction (720 ILCS 5/10-5(b)(10) (West 2008)). As a result, he was required to register pursuant to the Act as a "violent offender against youth." On April 19, 2016, defendant registered with the Du Page County Sheriff's Office and reported that he resided at an address in Eola. Defendant subsequently relocated to Aurora. Between January 12 and May 24, 2017, he registered with the Aurora Police Department 11 times. Specifically, on January 12, 2017, he designated his address as a hotel at 2380 Farnsworth Avenue, Room 105. On February 8, 2017, he changed his address to a hotel at 2450 N. Farnsworth Avenue. From March 29 through May 9, 2017, he registered weekly and indicated that he was homeless. When defendant registered as homeless, he sometimes filled out a "log sheet" indicating where he slept the previous seven nights. Those log sheets indicated that defendant spent April 4 through April 23, 2017, at 659 S. River Street, April 24 at 1250 N. Farnsworth Avenue (there was no room number specified), and April 25 through May 8 at 1250 N. Farnsworth, Room 136. On May 16, 2017, defendant designated his fixed residence as 2450 N. Farnsworth Avenue, Room 136. On May 24, 2017, he registered as homeless.

¶ 13    Jennifer Logan, an administrative secretary for the Aurora Police Department, testified for the State regarding her interaction with defendant on May 24, 2017. Defendant advised Logan that he was homeless and that he had no friends or family with whom he could stay. When Logan asked defendant where in the city he was going to be staying, he responded that he "would just be walking around." Logan advised defendant that he needed to "come back on May 31 of 2017 if he remained homeless." Defendant then told Logan that he was "attempting to be compliant." He added, however, that "maybe he just wouldn't come back so that he could get picked up so he would at least have a place to stay." Logan attempted to assist defendant with finding a place to stay, but

she was unsuccessful. Defendant signed a form on May 24, 2017, instructing him that he was required to register again on May 31, 2017, and he was given a copy of that form.

¶ 14    Defendant did not register with the Aurora Police Department after May 24, 2017. In July 2017, Logan informed Officer Jeff Sherwood of the Aurora Police Department that defendant had not registered, and a warrant was issued for defendant's arrest. On September 19, 2017, defendant was arrested at the hotel at 2450 N. Farnsworth Avenue (no room number was specified on the booking form). Logan testified that she did not know defendant's housing status after May 24, 2017. Sherwood likewise acknowledged that defendant "could have been anywhere" between May 24 and September 19, 2017.

¶ 15    Neither Logan nor Sherwood—the State's only two witnesses—were ever specifically questioned as to whether defendant registered in any jurisdiction other than Aurora after May 24, 2017. The prosecutor questioned Sherwood on direct examination as follows:

"Q. Now at the end of July 2017, did you become aware through Jennifer Logan whether the defendant had stopped coming to register?

A. Yes.

Q. Okay. And upon becoming aware that the defendant had failed—or had stopped coming to register, did you check that computer base with his registration information?

A. Yes.

Q. And when you checked the computerized registration, did you see that the last date that he had reported was May 24 of 2017?

A. That's correct."

It is unclear whether Sherwood meant that defendant never reported to *any* jurisdiction after May 24, 2017, or merely that defendant never again reported to the Aurora Police Department.

¶ 16    Defendant moved for a directed verdict, arguing that the State failed to prove that he was homeless on May 31 or June 1, 2017 (the two dates specified in the superseding indictment). In presenting her argument, defense counsel reasoned that, if defendant had procured a fixed residence in the week between May 24 and May 31, 2017, he would have been within the five-day grace period to notify the Aurora Police Department of his new residence. Defense counsel also emphasized that defendant was not charged with failing to notify the Aurora Police Department that he procured a fixed residence. The prosecutor responded that the evidence showed that defendant "never registered anywhere" after May 24, 2017. The prosecutor contended that the State was not required to prove that defendant was homeless, just that he registered as homeless on May 24, 2017. The prosecutor acknowledged that, if defendant procured a fixed residence on May 31, 2017, he would have been allowed to register within five days thereafter. However, the prosecutor maintained that the date of the offense alleged in the indictment was not an element of the offense and that the evidence showed that defendant "never registered anywhere a fixed address after that." In her rebuttal argument, defense counsel noted that there was no evidence that the Aurora Police Department checked whether defendant registered with any other jurisdiction.

¶ 17    The court denied the motion for a directed verdict. The court reasoned that the State presented evidence that defendant "was given the date of the 31st to come in and he did not." The court also believed that there was evidence that defendant was homeless on May 31, 2017, because (1) defendant indicated on May 24, 2017, that he was homeless and (2) defendant never notified the Aurora Police Department after May 24, 2017, that he had a fixed residence.

¶ 18    Defendant presented no evidence. The parties submitted competing nonpattern jury instructions, which reflected their disagreement as to whether the State had to prove that defendant was homeless. The court gave the State's instructions. The jury found defendant guilty. The court

denied defendant's posttrial motion and sentenced him to two years in prison. Defendant timely appealed.

¶ 19                                    II. ANALYSIS

¶ 20    Defendant challenges the sufficiency of the evidence, the propriety of two jury instructions, and certain comments that the prosecutor made during closing arguments. Because we hold that the evidence was insufficient to support the conviction, we need not address the jury instructions or the closing arguments.

¶ 21    Defendant's sufficiency-of-the-evidence argument is as follows. Case law interpreting the analogous Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2018)) holds that one of the elements that the State must prove is that the offender lacked a fixed residence in the subject jurisdiction at the time of the alleged violation. Although there is authority to the contrary, such authority is factually distinguishable from the present case. Accordingly, we should hold that the State was required to prove here that defendant lacked a fixed residence in Aurora on or about June 1, 2017. The State, however, never proved this. To the contrary, the evidence showed that (1) his housing status "fluctuated constantly" in 2017, (2) he provided multiple addresses in his registrations in 2017 that could have been fixed residences for purposes of the Act, and (3) he ultimately was arrested at one of the addresses that he had previously listed as his fixed residence. Moreover, having last registered as homeless, if defendant left Aurora between May 24 and May 31, 2017, he was under no obligation to inform the Aurora Police Department that he relocated. The State failed to prove that, under these circumstances, he was required to register in Aurora after May 24, 2017.

¶ 22    The State responds that it proved beyond a reasonable doubt that defendant violated the Act, arguing as follows. Case law does not support defendant's contention that the prosecution

was required to establish, as an element of the offense, defendant's homelessness after May 24, 2017. Defendant registered as homeless on May 24, 2017, so his status under the Act remained in effect until he reported a different status to the Aurora Police Department or until he registered in a different jurisdiction. Although defendant presents hypothetical scenarios under which he could have been innocent of the charged offense, such arguments do not rise to the level of reasonable doubt. Moreover, contrary to what defendant argues, had he left Aurora after May 24, 2017, he would have been required to notify Aurora of that relocation. Assuming, *arguendo*, that the prosecution was required to prove defendant's homeless status as an element of the offense, the prosecution met its burden here. On that point, the State mentions that (1) defendant registered consistently with the Aurora Police Department during the first five months of 2017, (2) he indicated in many of those registrations that he was homeless, (3) his comments to Logan on May 24, 2017, suggested that he intended (a) to remain homeless in Aurora and (b) not to comply with the Act's reporting requirements, and (4) he was eventually arrested in Aurora.

¶ 23                           A. Elements of the Offense

¶ 24     The threshold issue is whether the State was required to prove that defendant was in Aurora on or about June 1, 2017, and that he lacked a fixed residence at that time. This presents a question of law, which we review *de novo*. *People v. Scott*, 2017 IL App (4th) 150529, ¶ 15.

¶ 25     The parties have not cited, and we did not find, any case arising under the Act that would be helpful to our analysis. We agree, however, that certain cases arising under SORA are relevant to our analysis, as the two registration schemes contain similar language. Although the parties cite many cases, three cases warrant discussion: *People v. Wlecke*, 2014 IL App (1st) 112467, *Scott*, and *People v. Woods*, 2020 IL App (1st) 173022.

¶ 26                                1. *Wlecke*

¶ 27    In *Wlecke*, the defendant was charged with, and convicted of, violating SORA by failing to report weekly while lacking a fixed residence. *Wlecke*, 2014 IL App (1st) 112467, ¶¶ 7, 15. The evidence showed that the defendant was released from prison on June 11, 2010, at which time he was given a temporary Illinois Department of Corrections identification card, listing his address as a veterans' hospital at 820 S. Damen Avenue in Chicago. *Wlecke*, 2014 IL App (1st) 112467, ¶¶ 8-9. On June 14, 2010, the defendant timely attempted to register with the Chicago Police Department but a police officer turned him away for lack of proper identification. *Wlecke*, 2014 IL App (1st) 112467, ¶ 10. The officer did not tell the defendant at that time that he would have to report weekly until he could provide satisfactory proof of his residence. *Wlecke*, 2014 IL App (1st) 112467, ¶ 10. On June 20, 2010, the defendant had an unrelated encounter with the police and was subsequently arrested for failing to register as a sex offender. *Wlecke*, 2014 IL App (1st) 112467, ¶ 11. During the defendant's interrogation in connection with that arrest, he told a police officer that he had been staying with friends at 4928 West School Street in Chicago. *Wlecke*, 2014 IL App (1st) 112467, ¶ 12. Apart from this statement, the State presented no evidence at the defendant's trial of where the defendant lived between June 11 and June 20, 2010. *Wlecke*, 2014 IL App (1st) 112467, ¶ 13.

¶ 28    On appeal, the defendant argued that the evidence did not support his conviction, because the State failed to prove either that he lacked a fixed residence or that he did not report weekly. *Wlecke*, 2014 IL App (1st) 112467, ¶ 19. The appellate court agreed with this argument and reversed the conviction. *Wlecke*, 2014 IL App (1st) 112467, ¶ 19. The court explained:

"To sustain [the defendant's] conviction for violating section 6 of [SORA], the State was required to prove beyond a reasonable doubt that [the defendant] (1) lacked a 'fixed residence' and (2) failed to report weekly. [Citation.] In the context of this case,

proving that [the defendant] lacked a fixed residence would have required the State to adduce evidence that during the nine days following his release from prison and before his arrest, [the defendant] did not stay in any one place for at least five days. But the record lacks any evidence of [the defendant's] presence (or absence) at either of the two addresses given by him—820 S. Damen or 4928 W. School Street—for an aggregate period of five days or more between June 11 and June 20, 2010." *Wlecke*, 2014 IL App (1st) 112467, ¶ 21.

The court rejected the State's arguments that (1) the veterans' hospital could not have been a "fixed residence" for purposes of SORA and (2) SORA required the defendant to provide a government-issued identification when he attempted to register with the Chicago Police Department on June 14, 2010. *Wlecke*, 2014 IL App (1st) 112467, ¶¶ 22-29. The court also rejected the State's argument that the defendant's comment after being arrested on June 20, 2010—that he had been staying with friends—was an admission that he lacked a fixed residence. *Wlecke*, 2014 IL App (1st) 112467, ¶ 30. On this point, the court emphasized that the defendant's lack of a fixed residence was "a critical element for the State to prove." *Wlecke*, 2014 IL App (1st) 112467, ¶ 31. According to the court, because SORA defined "fixed residence" broadly, as any place where a person resides for more than five aggregate days in a year, the defendant's comment that he had been staying with friends was not an admission that he lacked a fixed residence. *Wlecke*, 2014 IL App (1st) 112467, ¶ 31.

¶ 29    The court explained, however, that the State did not have to prove that there was "no address anywhere" that could be the defendant's fixed residence. *Wlecke*, 2014 IL App (1st) 112467, ¶ 34. Instead, to prove that the defendant lacked a fixed residence, the State had to prove whether he "was living at either of the two addresses given between June 11 and June 20, 2011

[*sic*].” *Wlecke*, 2014 IL App (1st) 112467, ¶ 34. The court noted that the State could have met its burden by obtaining hospital records or by interviewing the residents of 4928 West School Street. *Wlecke*, 2014 IL App (1st) 112467, ¶ 34. But in the absence of any evidence as to where the defendant lived during the nine-day period, the State failed to prove that the defendant violated SORA. *Wlecke*, 2014 IL App (1st) 112467, ¶ 34.

¶ 30    The court further determined that the State failed to prove that the defendant did not report weekly. *Wlecke*, 2014 IL App (1st) 112467, ¶ 37. The court reasoned that the defendant “made a good faith effort to comply” with SORA on June 14, 2010, but he was inappropriately turned away by a police officer. *Wlecke*, 2014 IL App (1st) 112467, ¶ 38. In the court’s view, if the defendant submitted insufficient identification on June 14, 2010, he should have been registered as lacking a fixed residence, not turned away. *Wlecke*, 2014 IL App (1st) 112467, ¶ 38. Had the officer registered the defendant as lacking a fixed residence on June 14, 2010, the defendant would not have been in violation of SORA six days later when he was arrested. *Wlecke*, 2014 IL App (1st) 112467, ¶ 38.

¶ 31                                     2. *Scott*

¶ 32    In *Scott*, the defendant was charged with, and convicted of, failing to register as a sex offender. *Scott*, 2017 IL App (4th) 150529, ¶ 1. The evidence at trial showed that the defendant last registered with the Jacksonville Police Department on August 11, 2014. *Scott*, 2017 IL App (4th) 150529, ¶ 6. At that time, the defendant signed a form that listed a mailing address, but he indicated that he did not live there, and he registered as homeless. *Scott*, 2017 IL App (4th) 150529, ¶ 8. The form instructed the defendant that his next registration date was August 18, 2014. *Scott*, 2017 IL App (4th) 150529, ¶ 8. The defendant did not report on August 18, 2014. *Scott*, 2017 IL App (4th) 150529, ¶ 6. Instead, he reported to the Jacksonville Police Department on August 21,

2014, at which time he told a police officer that he "thought he had a grace period." *Scott*, 2017 IL App (4th) 150529, ¶¶ 6-7. At that point, he was arrested for failing to register on August 18, 2014. *Scott*, 2017 IL App (4th) 150529, ¶¶ 4, 7.

¶ 33    Following his conviction, the defendant appealed. Relying on *Wlecke*, he argued that lack of a fixed residence was an element of the crime and that the State failed to prove that he lacked a fixed residence. *Scott*, 2017 IL App (4th) 150529, ¶¶ 15, 23. Specifically, he claimed that his report to the police on August 11, 2014, that he was homeless failed to establish that he lacked a fixed residence. *Scott*, 2017 IL App (4th) 150529, ¶ 22. The appellate court rejected this argument, asserting that *Wlecke* involved "a very different factual situation" than the case at bar. *Scott*, 2017 IL App (4th) 150529, ¶ 23. The court explained:

>    "Unlike the defendant in *Wlecke*, who never registered as a sex offender, defendant had registered as a sex offender. Additionally, this case does not involve a change in living circumstances that could warrant a new registration. [Citation.] Here, defendant did not register a fixed residence and thus acquiesced to the weekly reporting requirement, which is the most onerous registration requirement [citation]. Defendant signed the form that stated he needed to report back in one week, which was August 18, 2014. Thus, unlike *Wlecke*, no issue exists as to whether the weekly reporting provision of [SORA] applied to defendant, and 'the lack of a fixed residence' is not an element of the crime." *Scott*, 2017 IL App (4th) 150529, ¶ 25.

Accordingly,

>    "Under the facts of this case, the State did not have to prove defendant lacked a fixed residence. Since the lack of a fixed residence was not a element [*sic*] of the crime in this case, we do not address defendant's insufficiency of the evidence argument, including

whether the term 'homeless' constitutes lacking a fixed residence under [SORA]." *Scott*, 2017 IL App (4th) 150529, ¶ 26.

For similar reasons, the court also rejected the defendant's contention that the jury instructions should have specified that the State had to prove that he lacked a fixed residence. *Scott*, 2017 IL App (4th) 150529, ¶ 29. The court reasoned that "the lack of a fixed residence establishes the applicability of the weekly reporting requirement." *Scott*, 2017 IL App (4th) 150529, ¶ 29. That requirement "was not at issue and not an element of the crime" here, because the defendant "acquiesced to the weekly reporting requirement when he signed his August 11, 2014, registration form." *Scott*, 2017 IL App (4th) 150529, ¶ 29.

¶ 34                                                    3. *Woods*

¶ 35    In *Woods*, the State charged the defendant with violating SORA in that, between June 4 and June 9, 2016, he was required to report as a sex offender, he lacked a fixed residence, and he failed to report weekly with the Chicago Police Department. *Woods*, 2020 IL App (1st) 173022, ¶ 4. The evidence at trial showed that the defendant registered with the Chicago Police Department 11 times in 2015 and 2016. *Woods*, 2020 IL App (1st) 173022, ¶ 5. When the defendant would register, he would report lacking a fixed residence, even though he presented the police with an identification card indicating that his residence was 11201 South Vernon Avenue in Chicago. *Woods*, 2020 IL App (1st) 173022, ¶ 6. When the defendant last registered on May 27, 2016, he informed the police that he spent the preceding week sleeping on a Red Line train. *Woods*, 2020 IL App (1st) 173022, ¶ 6. On June 9, 2016, a police officer pulled the defendant over for an unrelated traffic stop. *Woods*, 2020 IL App (1st) 173022, ¶ 7. The defendant presented that officer with an identification card listing his address as 11201 South Vernon Avenue. *Woods*, 2020 IL App (1st) 173022, ¶ 7. The car the defendant was driving was registered to that same address, and

he told the officer that he lived at that address. *Woods*, 2020 IL App (1st) 173022, ¶ 7. During this stop, the officer learned that the defendant was not current on his sex-offender registration, and the defendant was arrested. *Woods*, 2020 IL App (1st) 173022, ¶ 7. The trial court found the defendant guilty. *Woods*, 2020 IL App (1st) 173022, ¶ 9.

¶ 36    The defendant appealed, arguing that the State failed to prove him guilty beyond a reasonable doubt. *Woods*, 2020 IL App (1st) 173022, ¶ 12. The appellate court agreed and reversed the conviction. *Woods*, 2020 IL App (1st) 173022, ¶ 32. The court noted that "the State charged defendant with violating SORA's section 6 for failing to register in Chicago for the period of June 4 to June 9, 2016." *Woods*, 2020 IL App (1st) 173022, ¶ 14. Citing *Wlecke*, the court asserted that, "to sustain a conviction under section 6 [of SORA] for failing to report on a weekly basis as a sex offender who lacks a fixed residence, the State must prove beyond a reasonable doubt that the defendant '(1) lacked a "fixed residence" and (2) failed to report weekly.' " *Woods*, 2020 IL App (1st) 173022, ¶ 16 (quoting *Wlecke*, 2014 IL App (1st) 112467, ¶ 21). Given the State's theory, the State "was required to prove not only that defendant lacked a fixed residence during this window of time [(June 4 through June 9, 2016)] and failed to report to the Chicago Police Department, but also that defendant *was residing in Chicago* during the relevant time and failed to so report." (Emphasis in original.) *Woods*, 2020 IL App (1st) 173022, ¶ 17.

¶ 37    According to the court, even if the State proved that the defendant resided in Chicago between June 4 and June 9, 2016, the State failed to prove that the defendant lacked a fixed residence in Chicago during that time. *Woods*, 2020 IL App (1st) 173022, ¶ 19. The court explained that, although the evidence showed that the defendant lived in Chicago without a fixed residence for a significant period leading up to his last registration, the State's witnesses had "no idea" about the defendant's housing status after May 27, 2016, and those witnesses made no effort

to confirm that the defendant was homeless. *Woods*, 2020 IL App (1st) 173022, ¶ 19. The court determined that the trial court erred in inferring from the defendant's prior homelessness that he was homeless from June 4 through June 9, 2016. *Woods*, 2020 IL App (1st) 173022, ¶ 20. The court refused to " 'fill in the gaps in the State's evidence with conjecture' as to defendant's housing status." (Internal quotation marks omitted.) *Woods*, 2020 IL App (1st) 173022, ¶ 20 (quoting *People v. James*, 2019 IL App (1st) 170594, ¶ 22).

¶ 38    The court continued:

> "The same problems of proof that existed in *Wlecke* exist here. The State did not prove that the address defendant gave the police on South Vernon Avenue was not a 'fixed residence' within the meaning of SORA. The State did not show that defendant did not actually live there, even if only recently, and the fact that he was driving a car registered to that address certainly placed at least some credibility in the possibility that he did, in fact, temporarily reside there—five days in the aggregate, as required by SORA." *Woods*, 2020 IL App (1st) 173022, ¶ 23.

¶ 39    The court rejected the State's various attempts to "salvage this conviction" on appeal (*Woods*, 2020 IL App (1st) 173022, ¶ 24), including the State's efforts to "shift the burden to defendant to prove that he *was not* homeless" between June 4 and June 9, 2016 (emphasis in original) (*Woods*, 2020 IL App (1st) 173022, ¶ 25). According to the court, "[i]t was the obligation of the State, which charged defendant with failing to report weekly as a person lacking a fixed residence, to prove that defendant was, in fact, without a fixed residence—that his 'status as homeless in Chicago' had *not* changed since his last reporting." (Emphasis in original.) *Woods*, 2020 IL App (1st) 173022, ¶ 25. The court hypothesized that the State might have been able to meet this burden had the defendant made some admission or if the police "looked into the matter

and confirmed that defendant did not, in fact, reside at that South Vernon address or anywhere else during that time window." *Woods*, 2020 IL App (1st) 173022, ¶ 26. In the court's view, the State " 'failed to meet its affirmative obligation to investigate the charge.' " (Internal quotation marks omitted.) *Woods*, 2020 IL App (1st) 173022, ¶ 26 (quoting *James*, 2019 IL App (1st) 170594, ¶ 22).

¶ 40    Finally, the court addressed the State's argument that the defendant's failure to notify the Chicago Police Department of any change of address meant that he must have remained homeless between June 4 and June 9, 2016. *Woods*, 2020 IL App (1st) 173022, ¶ 27. The court rejected this argument for three reasons: (1) the fact that the defendant did not report a fixed residence did not necessarily mean that he lacked a fixed residence, (2) no witness directly testified that the defendant did not report a fixed residence to the Chicago Police Department, and (3) the defendant arguably reported a fixed residence on and prior to May 27, 2016, when he presented an identification card with an address on it, even though he reported on those occasions that he was homeless. *Woods*, 2020 IL App (1st) 173022, ¶¶ 28-30.

¶ 41    The court in *Woods* did not cite the Fourth District's opinion in *Scott*.

¶ 42          4. The State Was Required to Prove That Defendant Was in Aurora

On or About June 1, 2017, and That He

Lacked a Fixed Residence at That Time

¶ 43    After considering *Wlecke*, *Scott*, and *Woods*, and upon reviewing both the allegations of the superseding indictment and the evidence adduced at trial, we hold that the State was required to prove that defendant was in Aurora on or about June 1, 2017, and that he lacked a fixed residence at that time.

¶ 44    *Woods* offers a comprehensive and convincing explanation of why the State must prove its allegations and refrain from either shifting the burden to the defendant or relying on speculation to fill in the gaps. At first blush, *Woods* might appear inconsistent with *Scott*, as those cases reached contrary conclusions about whether the State was required to prove that each respective defendant lacked a fixed residence. But the factual differences between *Scott* and *Woods* explain their results. In *Scott*, there apparently was no specific allegation in the charging instrument that the defendant lacked a fixed residence on August 18, 2014. See *Scott*, 2017 IL App (4th) 150529, ¶ 4. In *Woods*, on the other hand, the charging instrument alleged that the defendant lacked a fixed residence between June 4 and June 9, 2016. *Woods*, 2020 IL App (1st) 173022, ¶ 4. Moreover, key to the court's decision in *Scott* was that the case did "not involve a change in living circumstances that could warrant a new registration." *Scott*, 2017 IL App (4th) 150529, ¶ 25. To that end, unlike in *Woods*, there was no reason to suspect that the defendant in *Scott*, despite having previously registered as homeless, had a fixed residence. Most importantly, unlike in *Woods*, when the defendant in *Scott* was arrested, he effectively admitted to the police that his living circumstances had not changed since the date that he last registered. Specifically, on August 21, 2014, he returned to the same police station where he had registered 10 days earlier, and he told the police at that time that he believed that he had some sort of a grace period for reporting. These factual differences account for the divergent holdings in *Scott* and *Woods* as to whether the prosecution was required to prove that each respective defendant lacked a fixed residence.

¶ 45    The circumstances here are closer to those in *Woods* than to those in *Scott*. The State charged defendant with violating the Act in the following manner on or about June 1, 2017:

> "defendant, a violent offender against youth, knowingly failed to register weekly as required *as a homeless person*, on or before May 31, 2017, with his last registration

occurring on May 24, 2017, in accordance with the provisions of the [Act], *with the Aurora Police Department*." (Emphases added.)

The charging instrument was ambiguous. Was the State alleging that defendant was required to register as a homeless person *with the Aurora Police Department* on or before May 31, 2017? Or was the State alleging that defendant was required to register as a homeless person *somewhere* on or before May 31, 2017, having last registered with the Aurora Police Department? From the prosecutor's opening statement, it appears that the State's theory was the former. Irrespective of that ambiguity, the State plainly alleged in the superseding indictment that defendant was required to register "as a homeless person" on or before May 31, 2017—in other words, that defendant continued to lack a fixed residence after May 24, 2017. Thus, the charging instrument more closely resembled the charging instrument in *Woods* than the one in *Scott*.

¶ 46    Additionally, in *Scott*, there was no evidence that the defendant ever registered a fixed residence. Here, by contrast, during 2017, defendant alternated between registering fixed residences and registering as homeless. Defendant ultimately was arrested at a location in Aurora that he had previously designated as a fixed residence. Accordingly, it was not a foregone conclusion that defendant lacked a fixed residence after May 24, 2017.

¶ 47    Finally, the defendant in *Scott* never disputed that he remained within the jurisdiction of the Jacksonville Police Department between August 11 and 21, 2014. Thus, the reviewing court had no occasion to consider whether the State was required to prove that the defendant remained within the jurisdiction of the Jacksonville Police Department. Unlike the defendant in *Scott*, defendant made no admissions upon his arrest. And unlike the defendant in *Scott*, defendant argues on appeal that the State failed to prove that he was within the jurisdiction of the Aurora Police Department at the time specified in the charging instrument.

¶ 48    As illustrated by *Wlecke*, *Scott*, and *Woods*, what the prosecution must prove at trial depends on the circumstances presented and how the prosecution alleges that the defendant violated the statutory requirements. We recognize that it would be a tall order, and in many scenarios an insurmountable task, to require the prosecution to prove the daily whereabouts of registrants who fail to notify the proper authorities of their movements. The State's hands, however, are not tied. In *State v. Peterson*, 230 P.3d 588, 592 (Wash. 2010), upon construing Washington's sex-offender registration requirements, the Supreme Court of Washington recognized that "it is possible to prove that a registrant failed to register within any applicable deadline without having to specify the registrant's particular residential status." The court reasoned that it would be "absurd" to "allow[ ] individuals to escape punishment when they have failed to register within the prescribed deadlines." *Peterson*, 230 P.3d at 593.

¶ 49    We agree with those propositions. If the prosecution can prove that a person subject to the Act failed to comply with the Act's requirements under any potentially applicable deadline for reporting or registering, it certainly would be possible to sustain a conviction without proving the defendant's whereabouts during the time when he failed to report or register. Here, for example, if the State had evidence that defendant failed to timely register *in any jurisdiction* after last registering in Aurora as homeless on May 24, 2017, the State could have avoided having to prove defendant's whereabouts and living arrangements after that date. See *Peterson*, 230 P.3d at 593 (rejecting the argument that "an offender who successfully hides his whereabouts after moving cannot be convicted of failure to register despite clear evidence that he failed to register within any statutorily prescribed deadline"). Given that the Act requires the law enforcement agency that registers a person to "forward any required information to the Department of State Police" and to "enter the information into the Law Enforcement Agencies Data System (LEADS)" (730 ILCS

154/45 (West 2016)), it would seem rather straightforward to determine whether a person has registered in any other jurisdiction after a particular date. See also *James*, 2019 IL App (1st) 170594, ¶ 4 (noting that the defendant last registered as a sex offender in Illinois on August 21, 2012; there was no evidence that the police attempted to check whether the defendant had registered in another state, though it was possible for the police to have done so); *People v. Gomez*, 2017 IL App (1st) 142950, ¶ 22 (noting that the evidence showed that the defendant "never registered anywhere").

¶ 50 Here, however, the State did not clearly pursue its case under a theory that would have allowed the State to avoid having to prove defendant's whereabouts and living arrangements after May 24, 2017. As noted above, although the charging instrument was not a model of clarity, the State explicitly alleged that defendant was required to register "as a homeless person" on or before May 31, 2017. Moreover, at trial, the prosecutor never explicitly asked the State's witnesses whether defendant registered in any jurisdiction other than Aurora after May 24, 2017. In light of the language in the superseding indictment, and considering that the State did not introduce evidence that defendant failed to timely register in any jurisdiction other than Aurora, defendant's conviction can be upheld only if the State proved that defendant was required to register "as a homeless person" with the Aurora Police Department after May 24, 2017. To meet its burden on this point, the State had to prove that defendant was in Aurora on or about June 1, 2017, and that he lacked a fixed residence at that time. See 730 ILCS 154/10(a) (West 2016) ("Any person who lacks a fixed residence must report weekly, in person, *** with the chief of police in the municipality in which he or she is located.").

¶ 51 The State asserts that defendant merely presents hypothetical claims of innocence by highlighting possible scenarios in which he would not have been in violation of the Act's

registration requirements. We note that the State was required to prove that defendant failed to comply with the Act; it was not defendant's burden to prove that he complied with the Act. See *Woods*, 2020 IL App (1st) 173022, ¶ 25.

¶ 52 The State also argues that defendant was required to keep the Aurora Police Department apprised of his whereabouts if he relocated. Defendant, however, is correct that the Act does not explicitly require a registrant who lacks a fixed residence or a temporary domicile, and who most recently registered as homeless, to notify the law enforcement agency with which he last registered if he leaves the jurisdiction but remains in Illinois. A registrant in that situation would, however, be required, within 48 hours of leaving, to "register in person with the new agency of jurisdiction." 730 ILCS 154/30 (West 2016). We reiterate that the State never established that defendant failed to register in any jurisdiction other than Aurora after May 24, 2017.

¶ 53 The State relies on *People v. Jones*, 2017 IL App (1st) 143718, and *People v. Brock*, 2015 IL App (1st) 133404. Those cases do not support the State's arguments. It is true that both *Jones* and *Brock* generally identified the elements for proving a violation of section 6 of SORA as (1) the defendant was subject to SORA's reporting requirements and (2) the defendant knowingly failed to report in person at the requisite reporting agency. *Jones*, 2017 IL App (1st) 143718, ¶ 15; *Brock*, 2015 IL App (1st) 133404, ¶ 21. However, because of how the prosecution charged and tried the case at bar, to prove that defendant knowingly failed to report in person at the requisite reporting agency (allegedly the Aurora Police Department), the State had to prove that defendant was in Aurora on or about June 1, 2017, and that he lacked a fixed residence at that time. Accordingly, neither *Jones* nor *Brock* undermines our conclusion as to what the State had to prove to sustain defendant's conviction.

¶ 54 B. The State Failed to Prove That Defendant Was in

Aurora On or About June 1, 2017, and That He

Lacked a Fixed Residence at That Time

¶ 55    The question then becomes whether the State proved that defendant was in Aurora on or about June 1, 2017, and that he lacked a fixed residence at that time.

¶ 56    When a criminal defendant challenges the sufficiency of the evidence, it is not our role to retry him. *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 11. Rather, the proper inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Robinson*, 2013 IL App (2d) 120087, ¶ 11 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). We will not substitute our judgment for the fact finder's judgment on issues regarding witness credibility or the weight of the evidence. *Robinson*, 2013 IL App (2d) 120087, ¶ 11. However, we may reverse a conviction "[w]here the evidence is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" or "where proof of an element is wholly lacking." *Robinson*, 2013 IL App (2d) 120087, ¶ 11.

¶ 57    We hold that the State failed to prove that defendant was in Aurora on or about June 1, 2017, and that he lacked a fixed residence at that time. Defendant apparently moved to Aurora in early 2017. The evidence showed that defendant relocated frequently within Aurora during the first five months of 2017. He vacillated between registering a fixed residence and registering as homeless. When defendant last registered in Aurora on May 24, 2017, he registered as homeless. Although defendant made a comment when he registered on May 24, 2017, that "maybe he just wouldn't come back so that he could get picked up so he would at least have a place to stay," that says nothing about whether he remained homeless on or about June 1, 2017, or whether he even was in Aurora at that time. "[N]ot everyone who is homeless remains forever homeless ***."

*Woods*, 2020 IL App (1st) 173022, ¶ 20. Moreover, as we recognized in *People v. Peterson*, 404 Ill. App. 3d 145, 152 (2010), "[a] person can be homeless by any normal standards and still have a 'fixed residence' if he or she has an occasional but predictable place to stay." Additionally, a person may obtain a fixed residence even before he or she spends five days at that location. See *Peterson*, 404 Ill. App. 3d at 152 ("[A]n offender who waits to register an occasional address until after he or she has stayed five days has waited too long, at least if he or she could have anticipated the length of the stay."). Indeed, one of the State's witnesses here acknowledged that defendant "could have been anywhere" between May 24 and September 19, 2017, when he was arrested. And when defendant was arrested, the officers found him at 2450 N. Farnsworth Avenue, an address that he twice told the Aurora Police Department in 2017 was his fixed residence. Under these circumstances, the jury could only speculate that defendant was in Aurora on or about June 1, 2017, or that he lacked a fixed residence at that time. Accordingly, the State did not prove beyond a reasonable doubt that defendant violated the Act's registration requirements.

¶ 58    The State failed to meet its burden to prove that defendant violated the Act. Accordingly, we reverse defendant's conviction.

¶ 59                                III. CONCLUSION

¶ 60    The judgment of the circuit court of Kane County is reversed.

¶ 61    Reversed.

---

**No. 2-18-0543**

---

| | |
|---|---|
| **Cite as:** | *People v. Sweigart*, 2021 IL App (2d) 180543 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 17-CF-1428; the Hon. John A. Barsanti, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Anthony J. Santella, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Katrina M. Kuhn, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---