# Illinois Official Reports

## Appellate Court

---

**People v. Wlecke, 2014 IL App (1st) 112467**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL WLECKE, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-2467 |
| Filed | February 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for failing to register as a sex offender under the Sex Offender Registration Act was reversed, where the evidence showed that he timely reported at a registration unit following his release from prison and made a good-faith effort to register but was turned away due to the officer's refusal to complete the registration, for reasons other than any voluntary act by defendant. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-12696; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and S. Emily Hartman, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary L. Boland, and Heather Fahrenkrog, Assistant State's Attorneys, of counsel), for the People. |

Panel

JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Neville and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant Daniel Wlecke (Wlecke) was convicted of failing to register as a sex offender under the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2010)) (the Act) and sentenced to 2½ years in prison.

¶ 2    The Act requires a person convicted of a criminal sexual offense to register with the police or other law enforcement authority in whatever jurisdiction the offender resides. 730 ILCS 150/2 *et seq.* (West 2010). Section 3 of the Act provides that a sex offender "shall register *** with the chief of police in the municipality in which he or she resides or is temporarily domiciled for a period of time of 3 or more days." 730 ILCS 150/3(a) (West 2010).

¶ 3    Section 6 of the Act provides in relevant part:

"Any person who lacks a fixed residence must report weekly, in person, to the appropriate law enforcement agency where the sex offender is located. *** If any person required to register under this Article lacks a fixed residence or temporary domicile, he or she must notify, in person, the agency of jurisdiction of his or her last known address within 3 days after ceasing to have a fixed residence and if the offender leaves the last jurisdiction of residence, he or she, must within 3 days after leaving register in person with the new agency of jurisdiction." 730 ILCS 150/6 (West 2010).

¶ 4    The Act defines a "fixed residence" as "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year." 730 ILCS 150/2(I) (West 2010). Taking these provisions together, a convicted sex offender must register (1) a fixed residence address (anywhere the offender lives for five days or more during a calendar year), (2) a temporary residence address (*e.g.*, while on vacation, at school or visiting relatives for three or more days) or (3) every week if the offender lacks a fixed residence.

¶ 5    The obvious purpose of the Act is to assist law enforcement agencies in tracking the whereabouts of sex offenders and to provide the public information about where they are residing. Wlecke was convicted of aggravated criminal sexual assault in 1992 and was thus required to register under the Act. In 2010, when Wlecke was released from prison on an unrelated offense, he was required to re-register with the Chicago police department. For the reasons that follow, we find that the State failed to prove Wlecke guilty beyond a reasonable doubt. We therefore reverse Wlecke's conviction.

¶ 6                                    BACKGROUND

¶ 7        Wlecke was tried on two counts of failure to register as a sex offender under the Act: one count for failing to register in person within three days of establishing a residence or temporary domicile (730 ILCS 150/3(a)(1) (West 2010)), and one count for failing to report weekly while lacking a fixed residence (730 ILCS 150/6 (West 2010)). Although not explicitly stated, these charges were in the alternative as Wlecke could not simultaneously have a residence that he was required to register under section 3 and lack a fixed residence, thus subjecting him to the weekly reporting requirement of section 6.

¶ 8        The State introduced the following evidence at Wlecke's trial. On June 11, 2010 Wlecke was released from the Dixon Correctional Center. Kathy Chavera, a counselor at the prison, testified that prior to Wlecke's release, she completed a sex offender registration form with Wlecke. The reverse side of the form listed the requirements of registration, including the requirement to register within three days of his release, by June 14, 2010. Chavera read those requirements to Wlecke and Wlecke wrote his initials next to each of the requirements indicating that he understood them.

¶ 9        At the time he was released, Wlecke was also issued a temporary Illinois Department of Corrections (IDOC) identification card, listing his address (provided by him to IDOC) as 820 S. Damen Avenue in Chicago. 820 S. Damen is the Veterans' Administration (VA) Hospital. IDOC does not verify whether the given address for the temporary identification card is valid. The form given to Wlecke by IDOC also does not advise registrants that the IDOC temporary identification (ID) is not valid identification for purposes of registering with the police department.

¶ 10       On June 14, 2010, three days after his release, Wlecke reported to the Chicago police department's criminal registration unit to register as a sex offender. Wlecke presented his temporary IDOC identification card which listed 820 S. Damen as his residence. The registering officer, Officer Meaders, testified that he knew that 820 S. Damen is the address for the VA Hospital. Officer Meaders told Wlecke that the temporary IDOC identification card could not be used to register and that he would need to have identification issued by the Secretary of State, a driver's license, a passport, or identification from a foreign government to register. Officer Meaders wrote Wlecke's name on a log, but did not document where Wlecke was staying or inform him that until he had satisfactory proof of residence, he was required to report weekly. Meaders also failed to photograph Wlecke or take his fingerprints.

¶ 11       Six days later, on June 20, 2010, Wlecke was arrested for failure to register as a sex offender. Cook County Forest Preserve police officer William Ortlund testified that on that day, he was patrolling a public swimming pool in a park. Officer Ortlund saw Wlecke, who was carrying binoculars, staggering as he walked into the park. Officer Ortlund stopped Wlecke and noticed a strong odor of alcohol on his breath. When the officer questioned Wlecke as to how much he had to drink, Wlecke stated he had 8 to 10 beers within the past hour. According to Officer Ortlund, when asked what he was doing there, Wlecke responded he was going to the parking area to do some people watching and that he liked to look at girls. Officer Ortlund then conducted a background check of Wlecke's name and arrested Wlecke for failing to register as a sex offender.

¶ 12    Cook County Forest Preserve police officer Roberto Gonzalez was assigned to follow up with Wlecke on June 21, 2010. Officer Gonzalez read Wlecke his *Miranda* rights and Wlecke agreed to give the following statement, which was read to the jury:

> "On 6-11-10, I was released from Dixon CC for a non-related crime (not S.O.). During daylight hours I went to 35th and Michigan to register in accordance with law. Upon reviewing my temp IDOC card, the detective said he would add my name to the board and get a Illinois ID card with my permanent registering address on it. I was in the process of getting this done (it took a few days longer than I expected due to funding and work). In the interim, I was staying with friends on School Street near Cicero, 4928 West School. The contact with the SOR unit occurred on the 14th as Friday [June 11] was a late arrival on the bus. I apologize for not registering completely, but I was waiting for a ride/funding to go to the DMV on Elston Avenue."

¶ 13    The State presented no evidence of where Wlecke was living between June 11 and June 20, 2010. Wlecke elected not to testify and did not put on any evidence.

¶ 14    During deliberations, the jury sent out two notes asking for the definitions of "temporary domicile" and "fixed residence," and for a copy of the sex offender registration notification form. The court provided the jury with a redacted copy of the registration notification form and read to the jury the statutory definitions of "temporary domicile" and "fixed residence."

¶ 15    The jury found Wlecke not guilty of failing to register in person within three days of establishing a residence or temporary domicile under section 3(a)(1) of the Act, but guilty of failing to report weekly to the Chicago police department while lacking a fixed residence under section 6.

¶ 16    Wlecke filed a motion for a new trial, raising the arguments that (1) the court erred in denying his motion to preclude the State from introducing the circumstances of his arrest; (2) the State violated the court's order allowing the circumstances of his arrest to be introduced to explain why he was arrested and instead used it as a theory in the case; and (3) the State made multiple inflammatory statements during closing argument. The motion was denied.

¶ 17    Wlecke was sentenced to 2½ years in prison and 1 year of mandatory supervised release.

¶ 18                                                   ANALYSIS

¶ 19    On appeal, Wlecke argues that the State failed to prove him guilty beyond a reasonable doubt of failing to report weekly when lacking a fixed address. Specifically, Wlecke contends the State introduced no evidence proving either that he lacked a fixed residence or failed to report weekly. Although Wlecke raises other issues regarding the conduct of his trial, we believe the foregoing arguments are dispositive and require reversal.

¶ 20    Wlecke claims that the evidence was insufficient to prove him guilty of failing to register while lacking a fixed residence. When a defendant challenges the sufficiency of the evidence to sustain his conviction, the standard on review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1,

8 (2011). The trier of fact determines the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence, and this court will not substitute its judgment for that of the trial court on these matters. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). Although the determinations of the trier of fact are given great deference, they are not conclusive. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will set aside a criminal conviction if "the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt." *People v. McGee*, 398 Ill. App. 3d 789, 793 (2010).

¶ 21    To sustain Wlecke's conviction for violating section 6 of the Act, the State was required to prove beyond a reasonable doubt that Wlecke (1) lacked a "fixed residence" and (2) failed to report weekly. 730 ILCS 150/6 (West 2010). In the context of this case, proving that Wlecke lacked a fixed residence would have required the State to adduce evidence that during the nine days following his release from prison and before his arrest, Wlecke did not stay in any one place for at least five days. But the record lacks any evidence of Wlecke's presence (or absence) at either of the two addresses given by him–820 S. Damen or 4928 W. School Street–for an aggregate period of five days or more between June 11 and June 20, 2010.

¶ 22    Although the State argues that the VA Hospital cannot be considered a "fixed residence" under the Act, the expansive language used by the legislature in defining that term does not foreclose this possibility. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. The best evidence of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* We view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 23    Given that a fixed residence under the Act includes "any and all places" where a sex offender resides for an aggregate period of five days or more in a calendar year, it is not readily apparent from the Act's language that inpatient treatment at a medical facility would necessarily be excluded. While the Act excuses registration by offenders who are unable to comply because they are "confined, institutionalized, or imprisoned," (730 ILCS 150/3(c)(4) (West 2010)) (and thus do not pose a danger to the public), nothing in the Act suggests that offenders who voluntarily avail themselves of inpatient treatment should likewise be excused. In light of the Act's overriding purpose to track the location of convicted sex offenders, it makes sense that the legislature cast the widest net to accomplish that goal. And if a sex offender anticipates residing at, for example, a hospital, rehabilitative facility, drug treatment center or nursing home for a period of time aggregating three days or more, the registration requirements of section 3 of the Act apply. Further, if, during a calendar year, the offender resides in the facility for an aggregate of five days or more, the facility may be considered a "fixed residence" under the Act.

¶ 24    The Act also differentiates between a "fixed residence" and a "temporary domicile" by defining "temporary domicile" as "any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year." 730 ILCS 150/3(a)

(West 2010). If an offender lacks either a "fixed address" or a "temporary domicile," the Act instructs that the offender "must notify, in person, the agency of jurisdiction of his or her last known address." *Id.* Reading these provisions as a whole, it is clear that the intent of the legislature was to require offenders to register any place where the offender stays, be it for three or five days out of a year, and also to set a procedure to register those offenders who lack either a "fixed residence" or "temporary domicile," meaning those who have no place to stay consistently for more than three days out of a year, and to notify the agency of jurisdiction of their whereabouts. We would have to ignore the plain language of the Act to conclude that a person who resides at an inpatient treatment facility has no consistent place to stay and, therefore, has no "fixed residence" within the Act's meaning.

¶ 25    Examination of other statutory provisions regarding sex offenders reinforces this interpretation of the Act. The Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2010)) requires that a long-term care facility request a criminal history background check for all adults seeking admission to the facility. See 210 ILCS 45/2-201.5, 2-201.6 (West 2010). If the background check reveals that an applicant is a convicted sex offender, a licensed forensic psychologist must determine whether and to what extent the identified offender's criminal history necessitates the implementation of security measures within the facility. 210 ILCS 45/2-201.6(d) (West 2010). The facility must also provide notice to residents and employees of the facility that they have the right to ask whether any "residents" of the facility are identified offenders and that information regarding registered sex offenders may be obtained from the Illinois State Police website. 210 ILCS 45/2-216 (West 2010). The legislature therefore contemplated that some sex offenders may "reside" at nursing homes and that the address of the nursing home will be listed on the internet as the offender's residence. In light of these provisions and, again, given the expansive definition of "fixed residence" under the Act, there is no basis to conclude that sex offenders may not also "reside" at other types of inpatient treatment facilities.

¶ 26    Based on the plain language of the Act and given that the purpose of the Act is to protect the public by providing publicly available information regarding locations where sex offenders reside, we find that a residential treatment facility like the VA Hospital can be a "fixed residence" under the Act. Consequently, the State's position throughout the trial and on appeal that the VA Hospital cannot be a "fixed residence" is mistaken and its argument to the jury that the VA Hospital could not be a "fixed residence" under the Act was an incorrect statement of the law. The State introduced no evidence at trial eliminating the possibility that Wlecke, who had a history of mental illness and multiple hospitalizations at the VA Hospital, received inpatient treatment at the VA Hospital between the date of his release and the date of his arrest.

¶ 27    The duty to register mandated under section 3 of the Act includes the duty to provide "accurate information as required by the Department of State Police." 730 ILCS 150/3(a) (West 2010). The State argues that the duty to provide "accurate" information encompasses the offender's obligation to produce at registration a valid driver's license, State ID or other government-issued document showing the offender's residence. Failing production of such proof of residence, the State contends that the offender cannot complete the act of

registration and must, as happened here, be turned away, and, from that point on, necessarily be in violation of the Act's registration requirements.

¶ 28        But nothing in the Act's language supports the conclusion that "accurate information" is synonymous with and limited to the categories of identification listed by the State as satisfactory proof of residence. In fact, section 3 lists those types of "accurate information" that sex offenders must provide, which do not include a valid government-issued ID:

> "Such [accurate] information shall include a current photograph, current address, current place of employment, the employer's telephone number, school attended, *** extensions of the time period for registering *** and, if an extension was granted, the reason why the extension was granted and the date the sex offender was notified of the extension." *Id.*

Further, as noted, although Officer Meaders notified Wlecke that his IDOC temporary ID card could not be used to register, nothing in the registration form reviewed with Wlecke prior to his release advised him of that fact and that conclusion is, in any event, not consistent with the Act's definition of "accurate information."

¶ 29        The State's insistence that sex offenders attempting to register who claim to have a fixed residence must also present a government-issued ID listing that address is plainly inconsistent with the reality faced by offenders recently released from prison. In order to obtain an Illinois State ID, the applicant must present various categories of proof to the Illinois Secretary of State. Among those are proof of the applicant's signature (such as on a validly issued driver's license or a cancelled check issued within 90 days of the application), proof of the applicant's date of birth (such as on a birth certificate, social security card, or passport), and proof of the applicant's address (such as mail addressed to the applicant from a government agency at the given address, or utility bills in the applicant's name at that address issued with 90 days of the application). 92 Ill. Adm. Code 1030.Appendix B (2013). Given that offenders must register within three days of their release, in many cases a registrant will not be in possession of the information necessary to obtain a state-issued ID within that period of time. Here, for example, Wlecke arrived in Chicago on the "late bus" on a Friday and was required to register by Monday. Under such circumstances, it is highly likely that for individuals like Wlecke, it would be virtually impossible to comply with the Act if compliance necessitated the type of identification the State insists is required to register. Under these circumstances, we cannot agree that an offender like Wlecke who presents himself for registration and is turned away because he lacks a form of identification the Act does not require should be found to have violated the Act's registration requirements.

¶ 30        The State further claims Wlecke admitted that he lacked a fixed address in his written statement in which he said "I was staying with friends on School Street near Cicero, 4928 West School." The State then reasons that, given this admission, it proved the *corpus delicti* with corroborating evidence independent of the admission, such as Officer Meaders' testimony that Wlecke did not provide satisfactory proof of address and proof that the address given was the VA Hospital. These arguments are unavailing.

¶ 31        Whether Wlecke lacked a "fixed residence" was a critical element for the State to prove to sustain a conviction for violation of section 6 of the Act. The expression "staying with

friends" is subject to various interpretations given the Act's liberal definition of "fixed residence" as the offender need only reside "with friends" for an aggregate of five days out of a year. This definition means that "[a] person could have a 'fixed residence' by the Act's definition and yet be homeless by the ordinary way of speaking." *People v. Peterson*, 404 Ill. App. 3d 145, 153 (2010). This court in *Peterson* recognized that under the Act, "[a] person can be homeless by any normal standards and still have a 'fixed residence' if he or she has an occasional but predictable place to stay." *Id*. at 152. Therefore, Wlecke's "admission" that he was staying with friends is not an admission that he lacked a "fixed residence" as that term is used in the Act.

¶ 32    The State and the jury apparently placed great weight on Wlecke's statement that he was "staying with friends," the two different addresses given, and the legally unsupported argument that a hospital could not be a "fixed residence." Given the correct interpretation of the Act's definition of "fixed residence" and the State's failure to prove that Wlecke did not live at either address for an aggregate of five days between June 11 and June 20, 2010, the evidence is insufficient to support a reasonable inference that Wlecke lacked a "fixed residence." Therefore, proof of an essential element of the crime of which Wlecke was convicted is missing.

¶ 33    The State contends that the evidence proved Wlecke was guilty of violating the Act because it established that Wlecke knew of his duty to register and he plainly failed to register. However, Wlecke was acquitted by the jury of the charge of failure to register under section 3 of the Act. The problem with the State's argument is the somewhat conflicting charges with which Wlecke was charged. At trial, the State argued both that Wlecke did not register a residence or temporary domicile as required under the Act, and that Wlecke did not have a fixed residence, which would require him to report weekly. Given the jury's verdict, the State clearly failed to prove that Wlecke did not register within three days of establishing a residence or temporary domicile. 730 ILCS 150/3(a)(1) (West 2010). But now the State reasons that because Wlecke did not register, he therefore lacks a "fixed residence." The State would have this court take the evidence that Wlecke failed to provide proof of his residence when he attempted to register and infer that Wlecke did not reside at any of the given addresses for at least five days between the date of his release and the date of his arrest. However, given that the jury acquitted Wlecke of failure to register a fixed residence, the State had to also prove that Wlecke lacked a "fixed residence" and failed to report weekly to sustain a violation of section 6 of the Act.

¶ 34    This is not to say that the State had to prove that there is no address anywhere that could be Wlecke's "fixed residence." *Peterson*, 404 Ill. App. 3d at 154 (It would probably be absurd to require that the State prove that defendant did not have any place that he could be staying for five days during a year.). Rather, in order to prove that Wlecke lacked a fixed residence, the State had to prove whether Wlecke was living at either of the two addresses given between June 11 and June 20, 2011. Records from the VA could have established whether Wlecke received inpatient treatment and the residents of 4928 W. School Street could have attested whether Wlecke stayed there during that period of time. If the State had adduced evidence that Wlecke did not live at either address, then the element that Wlecke

lacked a "fixed residence" under section 6 of the Act would have been met.[1] But lacking any evidence of where Wlecke was living during that nine-day period, the State failed to prove a violation of section 6 of the Act.

¶ 35    The State also argues that Wlecke was aware of his duty to register based on the sex offender registration form he read and signed prior to his release. Although the evidence does support that Wlecke understood his duty to register within three days of his release, which he attempted to do, the form does not instruct an offender to request to be registered as a homeless person lacking a "fixed residence" if the initial attempt to register a particular address is unsuccessful. The form quotes only part of section 6:

> "Any person required to register under this Act who lacks a fixed residence must notify the agency with jurisdiction of the last known address within 3 days after ceasing to have a fixed residence and if the offender leaves the last jurisdiction of residence, the offender must within 3 days after leaving, register in person with the new agency of jurisdiction and must report weekly in person with the agency having jurisdiction."

¶ 36    The form omits the language from the Act instructing that "[a]ny person who lacks a fixed residence must report weekly, in person, to the appropriate law enforcement agency where the sex offender is located." 730 ILCS 150/6 (West 2010). Therefore, the form only explains the weekly reporting requirement in terms of someone who "ceases" to have a fixed residence, but it provides no guidance to someone who must register initially upon release from prison and who lacks either a "fixed residence" or adequate proof of a fixed residence.

¶ 37    The State also failed to prove the second element required for a violation of section 6 of the Act, *i.e.*, Wlecke's failure to report weekly. As already noted, the Act requires those offenders who lack a "fixed residence" to "report weekly, in person" to the appropriate law enforcement agency where the offender is located. 730 ILCS 150/6 (West 2010). A person required to register who lacks a "fixed residence" or "temporary domicile" must "notify, in person, the agency of jurisdiction of his or her last known address." *Id.* "The agency of jurisdiction will document each weekly registration to include all the locations where the person has stayed during the past 7 days." 730 ILCS 150/3(a) (West 2010). The plain language of the Act therefore requires a person who lacks a "fixed residence," to "register" his address by simply reporting and *notifying* the agency of jurisdiction that he lacks a "fixed residence" and to report weekly thereafter.

¶ 38    Here, the evidence shows that Wlecke timely reported to the registration unit after his release. Wlecke thus made a good faith effort to comply with the Act. The fact that Wlecke was not registered at that time was not due to any voluntary act on his part, but rather was due to Officer Meaders' refusal to complete the registration. Officer Meaders refused to register Wlecke either as a person with a "fixed residence" or as a person lacking a "fixed residence." Wlecke was simply turned away. If, as the State concedes, Officer Meaders knew that the address Wlecke gave was the address for the VA Hospital and the temporary IDOC

---

[1]Although, as discussed below, such evidence would still have been insufficient to show that Wlecke violated the weekly reporting requirement.

identification he presented was not valid proof of residence in any event, then Wlecke should have been registered as an offender lacking a "fixed residence." Imposing the most onerous registration requirement–weekly reporting–on offenders who are unable to document their residence is entirely consistent with the legislature's effort to allow law enforcement and the public to track the whereabouts of convicted sex offenders. Turning away offenders who are unable to document their residence frustrates this purpose.[2] Had Wlecke been registered on June 14, 2011, as an offender lacking a fixed residence, he would not have been in violation of the Act six days later when he was arrested as he would not have been required to report again until June 21, 2011.

¶ 39    The evidence at trial was insufficient to prove the offense of which Wlecke was convicted. As Wlecke was acquitted under section 3 of the Act, double jeopardy precludes a retrial on that charge. See *People v. Placek*, 184 Ill. 2d 370, 376 (1998) (noting that the double jeopardy clause prohibits a second prosecution for the same offense after acquittal). Given the insufficiency of the proof of Wlecke's violation of section 6, we reverse Wlecke's conviction outright.

¶ 40    Given our ruling on this issue, we need not address Wlecke's other arguments supporting his claim for a new trial.

¶ 41    For the reasons stated above, we reverse Wlecke's conviction.

¶ 42    Reversed.

---

[2]The record reveals that it is common practice for the Chicago police department's criminal registration unit to turn away sex offenders attempting to register for lack of proof of address. Between June 14, 2010 and June 18, 2010, the registration logs show 117 persons reported to register but 19 were turned away for failure to provide proof of address. Thus, for those 19 offenders, law enforcement lost the ability to track their whereabouts unless and until they either reappeared with a "satisfactory" proof or were arrested.