2021 IL App (2d) 190565-U
No. 2-19-0565
Order filed December 2, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1177 |
| ROBERT A. CASTELLANOS, | ) ) | Honorable Charles Peterson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court's reasonable inference on the timing of defendant's possession of a new cell phone was supported by the evidence presented and not error. The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. No fatal variance existed between the evidence adduced at trial and the indictment.

¶ 2   After a bench trial, defendant, Robert Castellanos, was convicted of failure to report as a sex offender (730 ILCS 150/6 (West 2018)). Following the denial of his motion for a new trial, defendant was sentenced to 180 days in jail and 24 months' probation. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    On January 10, 2018, defendant was charged in a two-count indictment with Count 1 articulated as unlawful failure to report a change of phone number as a sex offender in violation of section 6 of the Illinois Sex Offender Registration Act (the Act) (730 ILCS 150/6 (West 2018)); and Count 2 as unlawful failure to register a change of phone number as a sex offender in violation of section 3 of the Act (730 ILCS 150/3 (West 2018)).  Both counts of the indictment specify defendant's charged conduct as having occurred between June 9, 2017, through June 20, 2017.

¶ 5    Defendant's bench trial commenced on March 22, 2019. The State first called Officer John Cebulski of the Aurora Police Department to testify. Cebulski was one of four officers in charge of sex offender registrations in June 2017 when he was assigned to investigate defendant for a violation of the Act. Cebulski identified People's Exhibit 3, defendant's May 17, 2017, Illinois sex offender registration form listing 331-854-5419 as defendant's registered phone number. On June 16, 2017, Cebulski used that number in an attempt to contact defendant, but reached a recording that indicated it was not a working number.

¶ 6    Cebulski then contacted Maria Hernandez, a person mentioned in a report with defendant, and set up a meeting with her and defendant on June 20, 2017, at the Aurora Police Department. Cebulski separated Hernandez and defendant into separate interview rooms. Defendant told Cebulski that 331-854-5419 was his then-current phone number and responded that he did not know why the number was not working. As defendant had his phone on him at the time of the interview, Cebulski placed the phone in the interview room on speaker and called defendant's number. The recording indicating the number was not working answered the call. Defendant then told Cebulski that 331-854-5419 was not his number, but did not know what his current number was. They were able to find the number on defendant's cell phone and determined it to be 331-425-0368. Cebulski called the new number in the interview room and it activated defendant's

phone. Defendant said that Hernandez changed the phone number without his knowledge. Cebulski then placed defendant under arrest for violation of the Act.

¶ 7     The State next called Marivel Leal, defendant's former girlfriend. In June 2017, Leal was living in Aurora with defendant and his then-current girlfriend, Maria Hernandez. She testified that defendant had only one cell phone during the month of June 2017 but could not recall the number. Leal said the phone number defendant called and texted from on June 20, 2017, was different than the number he used before June 9, 2017. When asked when defendant got the new phone number, Leal stated that "[i]t was sometime in June. I don't recall exactly when."

¶ 8     The State next called Officer Renaldo Rivera of the Aurora Police Department to testify. Rivera was working at the Aurora Police Department of May 17, 2017, completing registration forms for sex offenders. Rivera stated that after information is entered into an Illinois sex offender registration form, the individual responsible for registering looks over the form to make sure all information is correct and signs each page. People's Exhibit 3, defendant's May 17, 2017, sex offender registration form, showed defendant's signature on each page.

¶ 9     Officer Kyle Hoffman of the Aurora Police Department was next called by the State. Hoffman was working at the Aurora Police Department on June 21, 2017, when defendant came in to update his phone number for sex offender registration. Hoffman changed defendant's phone number on the sex offender register form to 331-425-0368, had defendant review the form for accuracy and sign the necessary area on the form, and then provided a copy to defendant.

¶ 10    Defendant called Maria Hernandez to testify as his sole witness. She recalled purchasing a T-Mobile phone for defendant in her name with the phone number 331-425-0368. Hernandez purchased the phone in June 2017 because was not working at that time and could not afford his

own phone. She testified that this was intended to be a permanent arrangement. Hernandez was listed as the phone subscriber and responsible for paying the bill on the phone.

¶ 11     On cross-examination, Hernandez said that she purchased the phone for defendant prior to April 2017. Following the State's cross-examination of Hernandez, Defendant rested.

¶ 12     The trial court found in favor of defendant as to Count 2, unlawful failure to register a change in phone number as a sex offender under section 3 of the Act. The trial court stated that is did not find "that section applies to this case and/or there were facts sufficient to support a conviction." In finding defendant guilty on Count 1, unlawful failure to report a change of phone number as a sex offender in violation of section 6 of the Act, the trial court found

> "[T]here was testimony supporting the proposition that the defendant received his new cell phone in April 2017. Had he not filled out the form for May of 2017, *** I would find for the defendant in this case. However, he did fill out that form, and it was dated in May of 2017. There are his signatures on the bottom of the first page, which contains the phone number. And there *** is his signature on the second page, along with his various initials to various paragraphs relative to the reporting requirements.
>
> He knew that he had a cell phone, a new cell phone, in April of 2017. It's clear he filed this form in May of 2017 and did not update his cell phone.
>
> The testimony was clear that the Aurora Police Department could not contact him by his cell phone, because then didn't have the new cell phone number. Those contacts occurred in June of 2017.
>
> I believe that the State has met its burden of proof relative to this count beyond a reasonable doubt; and, accordingly, I'm going to find the defendant guilty of that count, and we'll proceed further."

Sentencing was continued to June 26, 2019.

¶ 13    On April 22, 2019, defendant filed a motion for a new trial arguing that the trial court erred in finding him guilty "not because [defendant] failed to report a change of phone number as charged in the Indictment, but rather that he lied on his registration of May 17, 2017." The motion argued that this exposed defendant "to an additional charge of willfully giving materially false information to the Aurora Police Department on May 17, 2017, as he was never charged with that crime." The trial court heard arguments on defendant's motion at a hearing on June 6, 2019, and reserved judgment until June 26, 2019.

¶ 14    Defendant's motion for a new trial was denied and he was sentenced to serve 180 days in the Kane County Jail, 24 months' probation, and ordered to pay fines and fees. On June 27, 2019, defendant filed a timely notice of appeal. On July 28, 2020, the trial court issued a written *nunc pro tunc* order dating to June 26, 2019, detailing its denial of defendant's motion for a new trial. In support of its finding of defendant's guilt under section 6 of the Act, the trial court stated

> "The defense raised 3 issues in his Motion for a New Trial ***. He argued that I found the defendant guilty based on conduct that occurred in May 2017, which was not the date charged in the indictment. Count 2 of the indictment alleges that the defendant committed the offense of Unlawful Failure to Report a Change of Phone Number as a Sex Offender in violation of 730 ILCS 150/6 between the dates of 6/9/17 [to] 6/20/17.
>
> The defendant argued that I found him guilty for failing to report his new telephone number during the May 2017 registration meeting with the police. The indictment charge is dated for conduct in June 2017. The charge for which I found him guilty of was contained on Count 2 of the indictment relative to failing to register a change in his phone number during June 2017.

In my trial decision, I mentioned his May registration event because that was his first meeting after acquiring a new phone in April. I found that meeting significant relative to the extensive form gone over by the police officer and defendant verifying a myriad of information including his address and, most importantly for this case, his telephone number where he could be contacted by the police. The form is initialed and signed by the defendant and the officer in numerous places.

In June the police tried to contact him by phone but were unable to do so. In his June registration meeting and when he was questioned about his phone number, he disclosed the new phone number and registered it the next day. The proofs clearly showed that the new number was not contained in any of the police forms until June after his meeting with the officer. In that meeting he was asked about his phone number because the officers could not contact him.

The defendant argued that *** Hernandez was not a credible witness. She testified, as a defense witness, about the purchase of the phone, that she gave it to the defendant in April 2017 and he had possession and control of it during the dates of the offense. I found her to be a credible witness relative to his possession of the new phone and the time when he acquired it. I did not find her statement to be "offhand" and she was credible on these issues. Her testimony in addition to the proof presented by the state was sufficient to find the defendant [guilty] beyond a reasonable doubt.

While the ownership of the phone is immaterial; the possession, control of it and the responsibility to register it is material as relates to Count 2. The defendant was using this phone to communicate, and he had a duty to report the new number when he obtained

the phone. The fact is he first registered the phone the following day after he was charged with the offense in this case."

We now examine defendant's appeal.

¶ 15                                     II. ANALYSIS

¶ 16    Defendant raises three contentions in this appeal. First, he contends that he was denied a fair trial when the trial court's findings of guilt were based on an incorrect recollection of the evidence. Second, defendant contends that the State did not prove beyond a reasonable doubt that he unlawfully failed to report his change of phone number under section 6 of the Act. Third, defendant contends that there was a fatal variance between the indictment and the evidence the trial court relied on to find him guilty. We address defendant's contentions in turn.

¶ 17    Beginning with defendant's first contention, he takes issue with the trial court's following findings of his guilt: "There was testimony supporting the proposition that the defendant received his new cell phone in April 2017. Had he not filled out the form for May of 2017 *** I would find for the defendant in this case. However, he did fill out that form." Defendant argues that there was no evidence at trial that he received his new phone in April 2017. Instead, defendant avers that the evidence only showed that the phone was purchased for him at that time, but not given to him until sometime in June 2017. He argues that the court further exacerbated its mistaken recall of the evidence in its written order denying his motion for a new trial when it stated, "the proofs clearly showed that he had possession of the phone and number since [the] May 2017 registration event" and that defendant, after Hernandez purchased the phone for him in April 2017, "had possession and control of it during the dates of the offense."

¶ 18    Defendant concedes that his counsel failed to raise this issue in the trial court. However, he asks this court to review the matter for plain error.

¶ 19    Plain error occurs where the defendant shows a clear or obvious error, and that either (1) the evidence is closely balanced, or (2) the error is of such magnitude that the defendant is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process. *People v. Johnson,* 208 Ill. 2d 53, 64 (2003). A reviewing court typically undertakes plain-error analysis by first determining whether error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). If error is found, the court then proceeds to consider whether the two prongs of the plain-error doctrine have been satisfied. *Sargent*, 239 Ill. 2d at 189-90. Thus, we must first determine whether an error occurred. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 20    "The trial court's failure to recall and consider testimony crucial to defendant's defense" will result "in a denial of defendant's due process rights." *People v. Mitchell*, 152 Ill. 2d 274, 323 (1992); see also *People v. Bowie*, 36 Ill. App. 3d 177, 180 (1976). In reviewing a conviction following a bench trial, we must presume the trial court "considered only competent evidence in reaching its verdict," unless shown otherwise "by affirmative evidence in the record." *People v. Simon*, 2011 IL App (1st) 091197, ¶ 91. "Where the record affirmatively shows that the trial court failed to recall crucial defense evidence when entering judgment, the defendant did not receive a fair trial." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75. In a bench trial, it is the trial court's responsibility "to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Kiertowicz*, 2013 IL App (1st) 123271, ¶ 19. The State has the benefit of all reasonable inferences. *Kiertowicz*, 2013 IL App (1st) 123271, ¶ 19. Whether a defendant's due process rights have been denied constitutes an issue of law, which we review *de novo*. *Williams*, 2013 IL App (1st) 111116, ¶ 75.

¶ 21    We find the trial court's findings that Hernandez gave him the new phone before his May 17, 2017, registration was a reasonable inference supported by the evidence. Hernandez testified

that she purchased the phone for defendant prior to April 2017 because he could not afford to pay the bill for his own phone. If defendant was unable to afford his own phone in April 2017, the trial court could reasonably infer that Hernandez purchased the new phone for defendant to use immediately and not let sit unused until sometime in June 2017.

¶ 22    Based on the evidence presented, we agree with the trial court that "there was testimony supporting the proposition that the defendant received his new cell phone in April 2017." The record shows that the trial court considered Hernandez's testimony and made the reasonable inference that she gave it to defendant in April 2017. We can find no error in the trial court's recall of the evidence presented at trial, and, accordingly, plain error review of this issue is unmerited. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 23    Defendant next contends that the State failed to prove beyond a reasonable doubt that he unlawfully failed to report his change of phone number under section 6 of the Act. He argues that section 6 of the Act does not establish a time period in which he must report a change in phone numbers, therefore requiring him to register every 90 days. Alternatively, defendant avers that even if the statute required him to report a change to his phone number within three days, the State failed to prove beyond a reasonable doubt that he received the new phone more than three days before June 21, 2017.

¶ 24    The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Hanna,* 207 Ill. 2d 486, 497 (2003); *Hartney Fuel Oil Co. v. Hamer,* 2013 IL 115130, ¶ 25. The best evidence of legislative intent is the language of the statute which will be given its plain and ordinary meaning. *People v. Tucker,* 167 Ill. 2d 431, 435 (1995); *People v. Bole,* 155 Ill. 2d 188, 197 (1993). Statutes are read as a whole, so that interpretation of a statute's language does not render any part meaningless or superfluous, and its words and phrases are

construed in light of other relevant provisions of the statute. *People v. Ellis,* 199 Ill.2d 28, 39 (2002); *In re Detention of Stanbridge,* 2012 IL 112337, ¶ 70. Issues of statutory construction are reviewed *de novo. People v. Robinson,* 172 Ill. 2d 452, 457 (1996).

¶ 25    The Act imposes two separate requirements on individuals who are subject to its provisions. See 730 ILCS 150/1 *et seq.* (West 2018). The first, outlined in section 3 of the Act, imposes a general duty to register on all sex offenders. 730 ILCS 150/3 (West 2018). The second, outlined in section 6 of the Act, is the duty to report. 730 ILCS 150/6 (West 2018).

¶ 26    Section 6 requires a person convicted of a violation of the Act to "report in person to the law enforcement agency with whom he *** last registered no later than 90 days after the date of his *** last registration and every 90 days thereafter ***." 730 ILCS 150/6 (West 2018). Relevant here, section 6 of the Act further provides:

"If any other person required to register under this Article changes his or her residence address, place of employment, telephone number, *cellular telephone number*, or school, *he or she shall report in person, to the law enforcement agency with whom he or she last registered*, his or her new address, change in employment, telephone number, *cellular telephone number*, or school, all new or changed e-mail addresses, all new or changed instant messaging identities, all new or changed chat room identities, and all other new or changed Internet communications identities that the sex offender uses or plans to use, all new or changed Uniform Resource Locators (URLs) registered or used by the sex offender, and all new or changed blogs and other Internet sites maintained by the sex offender or to which the sex offender has uploaded any content or posted any messages or information, and register, in person, with the appropriate law enforcement agency *within the time period specified in Section 3*." (Emphasis added.) 730 ILCS 150/6 (West 2018).

¶ 27    Section 3(a) of the Act provides, in pertinent part:

"(a) A sex offender, as defined in Section 2 of this Act, or sexual predator shall, within the time period prescribed in subsections (b) and (c), register in person and provide accurate information as required by the Illinois State Police. Such information shall include a current photograph, current address, current place of employment, the sex offender's or sexual predator's telephone number, *including cellular telephone number*, the employer's telephone number, school attended, all e-mail addresses, instant messaging identities, chat room identities, and other Internet communications identities that the sex offender uses or plans to use, all Uniform Resource Locators (URLs) registered or used by the sex offender, all blogs and other Internet sites maintained by the sex offender or to which the sex offender has uploaded any content or posted any messages or information ***." (Emphasis added.) 730 ILCS 150/3(a) (West 2018).

Section 3(b) of the Act provides, in pertinent part:

"Any sex offender, as defined in Section 2 of this Act, or sexual predator, regardless of any initial, prior, or other registration, shall, *within 3 days of beginning school, or establishing a residence, place of employment, or temporary domicile in any county*, register in person as set forth in subsection (a) ***." (Emphasis added.) 730 ILCS 150/3(b) (West 2018).

¶ 28    The purpose of the Act is to aid law enforcement by facilitating ready access to information about sex offenders and, therefore, to protect the public. *People v. Johnson*, 225 Ill. 2d 573, 585 (2007). A court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *People v. Clark*, 2019 IL 122891, ¶ 20. A court presumes that the General Assembly did not intend absurdity, inconvenience, or injustice in enacting legislation. *Clark*, 2019 IL 122891, ¶ 20.

¶ 29    The State admits that section 3(b) of the Act does not specifically include changes to phone numbers within its language to subject defendant to the three-day registration provision. However, the State argues that to interpret the Act to impose only the 90-day reporting requirement following defendant's change in phone number would render meaningless the language in section 6 requiring compliance with the timeliness of section 3. Further, the State argues that interpretation of the Act to require an offender to update a school address, residence, place of employment, or temporary domicile within three days, while allowing 90 days to disclose a change in phone number would produce absurd results in contradiction with the purpose of the Act.

¶ 30    The information listed in section 3(b) of the Act, subject to a three-day registration requirement, deals specifically with places in which an offender will be physically present. Of the remaining information included in sections 3(a) and 6 of the Act (a current photograph, telephone number, including cellular telephone number, employer's telephone number, e-mail addresses, instant messaging identities, chat room identities, Internet communications identities that the sex offender uses or plans to use, URLs registered or used by the sex offender, all blogs and other Internet sites) are not indicative of the offender's physical location. Illinois courts have specifically noted that the purpose of the Act, in addition to providing law enforcement with offenders' information and protecting the public, is to provide information about where they are residing. See *People v. James*, 2019 IL App (1st) 170594, ¶ 11; see also *People v. Wlecke*, 2014 IL App (1st) 112467, ¶ 5.

¶ 31    To accept the State's interpretation of the Act would render the information listed in section 3(b) superfluous. The General Assembly could have required everything listed in section 6 to be subject to the three-day reporting requirement of section 3(b), but for whatever reason, chose not to. The language of the Act is clear and unambiguous. Where the language of a statute

is unambiguous, the court's function is to enforce the statute as enacted. *People ex rel. Gibson v. Cannon*, 65 Ill. 2d 366, 369 (1976). We are not free to rewrite the language of the legislature. *People v. Murdock*, 321 Ill. App. 3d 175, 177 (2001). Therefore, we hold that defendant was required to register a change in phone number within 90 days of his last required registration under section 6 of the Act. We must now examine if the State proved beyond a reasonable doubt that defendant unlawfully failed to report his change of phone number under section 6 of the Act.

¶ 32    We review claims of insufficient evidence to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id.* It is not the function of this court to retry the defendant. *Id.* Rather, the trier of fact must assess the credibility of the witnesses and the weight of their testimony, resolve conflicts in the evidence, and draw reasonable inferences from that evidence, and this court will not substitute its judgment for that of the trier of fact on these matters. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001).

¶ 33    To prove defendant guilty of unlawfully failing to report a change in phone number under section 6 of the Act, the State needed to show beyond a reasonable doubt that defendant was previously convicted under the Act, changed his phone number, and failed to report his new phone number to the Aurora Police Department within 90 days of his last registration.

¶ 34    The indictment charged that "on or about June 9, 2017, through June 20, 2017, the defendant committed the offense of unlawful failure to report a change of phone number as a sex offender *** in violation of [730 ILCS 150/6] *** in that the defendant, a sex offender, knowingly

failed to report a change of phone number, in accordance with the provisions of [the Act] ***." In its findings of guilt, the trial court made the reasonable inference that Hernandez gave defendant the new phone in April 2017 when he could not afford his own. Based on the evidence presented, and the trial court's reasonable inference that the phone number changed in April 2017, defendant had a duty to report the new number with police when he registered with the Aurora Police Department on May 17, 2017, "no later than 90 days after his *** last registration ***." See 730 ILCS 150/6 (West 2018). Even though the three-day reporting requirement of section 3(b) of the Act does not apply to defendant's change of phone number, he was not relieved of his duty under section 6 of the Act to report a change in phone number when completing his 90-day registration on May 17, 2017.

¶ 35    The State elected to charge defendant under section 6 of the Act, and not section 10. Section 10 states, "Any person who is required to register under this Article who knowingly or willfully gives material information required by this Article that is false is guilty of a Class 3 felony." 730 ILCS 150/10 (West 2018). As articulated above, to convict defendant of a violation under section 6 of the Act, the State needed to prove that he failed to report his new phone number to the Aurora Police Department within 90 days of his last registration. See 730 ILCS 150/6 (West 2018); see also *supra* ¶ 33. We don't presume to speculate as to why the State elected to charge defendant under section 6 instead of section 10, except to point out that the former section requires proof of defendant's *failure* to register information, as opposed to the latter's requirement of proving defendant *knowingly* gave *false* information when he registered on May 17, 2017. Having already accepted the trial court's reasonable inference that defendant had the new phone number in early April, he was required to register that new number on May 17, 2017. The evidence shows, whether he knowingly gave his old false number or just failed to register the new number, that he did not

register the new phone number on that date. As such, when Cebulski attempted to contact defendant in June 2017, and reached an inoperable number, defendant was in violation of section 6 of the Act. See 730 ILCS 150/6 (2018).

¶ 36    Therefore, after viewing the evidence in the light most favorable to the State, we hold that a rational trier of fact could have found defendant guilty when he failed to register his new phone number with the Aurora Police Department between June 9, 2017, and June 20, 2017.

¶ 37    Defendant's final contention in this appeal is that there was a fatal variance between the indictment and the evidence the court relied upon to find him guilty. Defendant argues that the trial court found him guilty solely based on its belief that he falsified the May 17, 2017, sex offender registration form. Defendant avers that this contention is supported by the trial court's comment that "[h]ad he not filled out the form for May of 2017 *** I would find for the defendant in this case. However, he did fill out that form." We disagree.

¶ 38    A defendant's allegation that there is a fatal variance between the indictment and the evidence at trial must be treated as a challenge to the sufficiency of the evidence. *People v. Edwards*, 337 Ill. App. 3d 912, 924 (2002). As discussed above, we review claims of insufficient evidence to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); see *supra* ¶ 32.

¶ 39    Due process requires that an indictment must apprise a defendant of the precise offense with which he is charged, and a fatal variance between the instrument charging a defendant and the proof pursuant to which a defendant is convicted at trial requires reversal of the conviction. *People v. Roe*, 2015 IL App (5th) 130410, ¶ 9. In order to be fatal, a variance between the charging

instrument and the poof at trial must be material and of such character that it misleads the accused in making his defense or exposes him to double jeopardy. *Roe*, 2015 IL App (5th) 130410, ¶ 9. To determine the existence of a fatal variance we consider the plain and ordinary meaning of the language in the indictment as read and interpreted by a reasonable person. *Id*. at ¶ 10.

¶ 40    Defendant's characterization that the trial court found him guilty solely based on its belief that he falsified the May 17, 2017, sex offender registration form is meritless. The trial court found that defendant received the new phone in April 2017, and failed to report the new number when he registered with the Aurora Police Department on May 17, 2017, preventing officers from contacting him in June 2017. The trial court specifically articulated that "I mentioned his May registration event because that was his first meeting after acquiring a new phone in April." The trial court further noted defendant did not report the new number until after he was arrested for the instant offense.

¶ 41    Defendant's conviction was based on a totality of the circumstances, not solely the May 17, 2017, registration form. There was no fatal variance between the indictment and the evidence adduced at trial. The May 17, 2017, registration form was disclosed and properly admitted at trial without objection. Its consideration as evidence of the charged offense by the trial court does not support defendant's fatal variance claim here. While it may be true that defendant's failure to register the new phone number may have been a violation of section 10 of the Act, the mere possibility that the trial court alluded to a separate offense does not expose defendant to double jeopardy.

¶ 42                                        III. CONCLUSION

¶ 43    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 44    Affirmed.